J-S02006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RYKEEM K. ALEXANDER, | |
| Appellant | No. 3236 EDA 2014 |

Appeal from the Judgment of Sentence November 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005115-2014

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 19, 2016**

Appellant, Rykeem K. Alexander, appeals from the judgment of sentence entered on November 14, 2014, in the Philadelphia County Court of Common Pleas.  We affirm.

The relevant facts of this case were set forth by the trial court as follows:

> This case arises out of a domestic dispute between [Appellant] and his wife, Complainant. [Appellant], Complainant and [Appellant's] children from a previous relationship lived together in a home owned by [Appellant]. Notes of Testimony ("N.T."), September 19, 2014 at 12, 23, 66-67. On April 9, 2014, Complainant obtained a temporary Protection From Abuse Order ("PFA") against [Appellant]. *Id*. at 13. On April 13, 2014, [Appellant] was arrested for violating the PFA. *Id*. at 52-53; *also see* PFA at Exhibit C-1. On April 10, 2014[, Appellant] was arrested on another matter related to the PFA. *Id*. at 43-45. [Appellant] contends that he never received notice of the PFA.

Complainant testified that on April 9, 2014, she obtained the PFA and brought it to the 17th District police station, so that it could be served on [Appellant]. *Id*. at 15. Philadelphia Police Officer Robin Summers ("Officer Summers") served the PFA at approximately 6:00 p.m. on April 9, 2014. *Id*. at 33, 41. Officer Summers testified that she knocked on the door at [Appellant's] home and a male's voice answered. *Id*. at 33-34. Through the closed door, Officer Summers informed the male that she was there to serve a PFA on [Appellant] but the door did not open. *Id*. Officer Summer waited for a half hour. *Id*. at 35. [Appellant's] mother arrived at the house. *Id*. [Appellant's] mother entered the house and then came back out to see why the police were there. *Id*. Officer Summers told [Appellant's] mother about the PFA and left the PFA with her. *Id*. at 37.

Philadelphia Police Officer Eric Lee ("Officer Lee") testified that on April 10, 2014, while responding to a radio call for a male in violation of a PFA, he encountered [Appellant]. *Id*. at 43-44. [Appellant] told Officer Lee that he had not been served with a PFA, although he understood that if he did have a stay away order he could have no contact with the person seeking protection. *Id*. at 45. Officer Lee explained that there was a PFA against [Appellant] and arrested him. *Id*. [Appellant] was then transported to Southwest Detectives. *Id*. at 46; *also see* subpoena for [Appellant's] April 10, 2014 arrest at Exhibit C-3.

[Appellant] was arrested again on April 13, 2014, in violation of the PFA. The April 13, 2014 arrest is the present case. Complainant testified that on April 13, 2014, at approximately 4:00 p.m., she returned to the marital home. *Id*. at 16. She heard [Appellant] call her name from across the street. *Id*. Complainant ran inside the house, locked the door and called the police. *Id*. Complainant went upstairs and took a shower. *Id*. When Complainant finished her shower she heard a banging noise coming from the front door. *Id*. at 17. Complainant looked downstairs and saw the front door open and [Appellant] with his hands on the door. *Id*. [Appellant] then ran away. *Id*. Complainant saw [Appellant's] children, ages eleven, seven and nine, enter the house. *Id*. at 29-30. Complainant called the police again. *Id*. When the police arrived, Complainant went downstairs and observed that the front door was damaged. *Id*. at 19; *also see* Exhibit C-2. Philadelphia Police Officer Justin Brommer ("Officer Brommer") responded to Complainant's call and observed the damaged door frame. *Id*. at 50-51. Officer

Brommer testified that Complainant was shaking, crying and appeared very frightened. *Id*. at 52. Officer Brommer's partner Officer Ryan stopped [Appellant] across the street. *Id*. at 52.

Complainant testified that prior to [Appellant's] April 13, 2014 arrest, [Appellant] said to her: "How could you file a PFA order against me?" *Id*. at 26.

[Appellant] testified: that he was never served with a PFA; that his mother did not give him the PFA that Officer Summers gave her; that although he and Officer Lee had a conversation, Officer Lee did not tell [Appellant] about the PFA; that he did not know how the front door to his house was damaged; and that he was dropping off his children at the marital home because that is where they lived and that [Appellant] stayed across the street at his friend's house. *Id*. at 65-69.

Trial Court Opinion, 6/25/15, at 2-4.

On September 19, 2014, following a bench trial, the trial court found Appellant guilty of one count of indirect criminal contempt for violating the PFA and one count of criminal trespass. On November 14, 2014, after the completion of a presentence investigation report ("PSI"), the trial court sentenced Appellant to a three-year term of reporting probation. No further penalty was imposed on the criminal contempt charge.

Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. On appeal, Appellant presents the following issues for this Court's consideration:

A. Was the evidence presented at trial sufficient to establish guilt beyond a reasonable doubt on any of the counts of which Appellant was convicted as there was no service on Appellant of the temporary protection from abuse order and therefore insufficient notice of specific provisions in the order?

B. Was the evidence presented at trial against the weight of the evidence to establish guilt beyond a reasonable doubt on any of the counts of which Appellant was convicted as there was no service on Appellant of the temporary protection from abuse order and therefore insufficient notice of specific provisions in the order?

Appellant's Brief at 6 (full capitalization omitted).

In Appellant's first issue, he presents a challenge to the sufficiency of the evidence:

Our standard of review in assessing whether sufficient evidence was presented to sustain Appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Walsh***, 36 A.3d 613, 618-619 (Pa. Super. 2012)

(citation and quotation marks omitted).

Appellant argues that he could not knowingly trespass at the marital residence or violate the PFA because he was never served with the PFA and was unaware of its provisions. Appellant's Brief at 11. We disagree.

To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. **Commonwealth v. Brumbaugh**, 932 A.2d 108, 110 (Pa. Super. 2007).

In the case at bar, Complainant testified that Appellant was aware of the PFA and that Appellant even expressed his indignation at the fact that Complainant obtained a PFA against him. N.T., 9/19/14, at 26. Additionally, Officer Robin Summers testified that when she attempted to serve Appellant with the PFA at the marital residence at 6139 Chancellor Street, someone came to the door but would not open it. *Id*. at 34-35. Officer Summers testified that she encountered Appellant's mother who had arrived at the house, and Officer Summers informed Appellant's mother that she was there to serve Appellant with a PFA. *Id*. at 37. Officer Summers then handed the PFA to Appellant's mother. *Id*. Finally, Police Officer Eric Lee testified that on April 10, 2014, when he responded to Complainant's call regarding her report of Appellant violating the PFA, he encountered Appellant. *Id*. at 45. Officer Lee testified that Appellant informed him that he was never served

with the PFA, but if he had been served, he was aware that a PFA meant he had to stay away from Complainant. *Id*.

After review, we reject Appellant's assertion that he was not properly served. The Pennsylvania Rules of Civil Procedure provide as follows:

Service of Original Process in Domestic Relations Matters

(a) Persons Who May Serve. Original process in all domestic relations matters may be served by the sheriff or a competent adult:

> (1) by handing a copy to the defendant; or
>
> **(2) by handing a copy;**
>
> > **(i) at the residence of the defendant to an adult member of the family with whom the defendant resides; but if no adult member of the family is found, then to an adult person in charge of such residence;** or
> >
> > (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which the defendant resides; or
> >
> > (iii) at any office or usual place of business of the defendant to the defendant's agent or to the person for the time being in charge thereof.

\* \* \*

(b) Service in Protection From Abuse Matters. In Protection From Abuse matters only, original process may also be served by an adult using any means set forth in subdivision (a) above. If personal service cannot be completed within forty-eight (48) hours after a Protection From Abuse petition is filed, the court may, by special order as set forth in subdivision (a)(3) above,

authorize service by another means including, but not limited to, service by mail pursuant to subdivision (c) of this rule.

Pa.R.C.P. 1930.4(a)(1)-(2) and (b) (emphasis added).

As noted above, Officer Summers handed a copy of the PFA to Appellant's mother at Appellant's residence. Additionally, through his own admission, Appellant's mother was at the house to watch his children, ages eleven, nine, and seven, while he went shopping. N.T., 9/19/14, at 79. We are satisfied that Appellant's mother's presence at Appellant's residence while he allegedly went shopping satisfies the definition of an adult in charge of the residence pursuant to Pa.R.C.P. 1930.4(a)(2)(ii). Thus, the service requirements of Rule 1930.4(a)(2) and (b) are met.

However, even if this service upon Appellant's mother were improper, we would conclude that Appellant had actual notice of the PFA. Under certain circumstances, personal service of the PFA is not mandated. In discussing the ramifications of a failure of personal service of a PFA, this Court has explained as follows:

> [S]ince the point of the [PFA] statute is to protect the victim from injury or death at the hands of the abuser, resort may be had to extraordinary measures when necessary to ensure that orders designed to provide protection actually do so. Otherwise, the intent of the statute could not be implemented, since emergency *ex parte* orders would be rendered nugatory until personal service was effected.

***Commonwealth v. Padilla***, 885 A.2d 994, 997-998 (Pa. Super. 2005) (citation omitted). In ***Padilla***, even though actual service of a PFA order was not proven, this Court was satisfied that the appellant had notice of the

PFA because he was informed of the PFA through a telephone conversation with a police sergeant. *Id*. at 996. Similarly, in **Commonwealth v. Staton**, 38 A.3d 785 (Pa. 2012), our Supreme Court held that while the appellant did not receive personal service of the PFA, the jury was permitted to infer notice. *Id*. at 794-795. Specifically, the jury found that the appellant had actual knowledge of the PFA based on evidence that established that the appellant hid when the Sheriff attempted service and third-party testimony that the appellant had been informed of the existence of the PFA. *Id*. The Supreme Court held that this finding of notice was based on the jury's credibility determination, and it could not disturb that finding.

In the case at bar, the record provides ample evidence from which the jury could have concluded that Appellant had actual notice of the PFA even if service had been defective. The testimony from Officers Summers and Lee in combination with Appellant's own statement to Complainant about her filing the PFA allowed the jury to conclude that Appellant had actual notice of the PFA.

Appellant was properly served with the PFA, or at the very least had actual notice of the PFA; thus, his argument fails. Therefore, because we conclude that Appellant had notice of the PFA, he knew that he was excluded from the residence and ordered to stay away from Complainant. Despite being on notice of the PFA, Appellant chose to violate it by contacting

Complainant, entering the residence, and intentionally damaging the door of the house. N.T., 9/19/14, at 19. Thus, the evidence was sufficient to establish indirect criminal contempt. Appellant is entitled to no relief on this issue.

For these same reasons, the record supports Appellant's conviction for criminal trespass. A person commits criminal trespass if, knowing that he is not licensed or privileged to do so, he enters, gains entry by subterfuge, or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof, or breaks into any building or occupied structure or separately secured or occupied portion thereof. 18 Pa.C.S. § 3503(a)(1)(ii). Here, the record reflects that, despite the PFA and Appellant's awareness of his exclusion from the residence, he chose to break open the door to the property. N.T., 9/19/14, at 16-17. These actions are sufficient to satisfy the elements of criminal trespass.

Next, Appellant challenges the weight of the evidence. However, before we may reach the merits of Appellant's challenge to the weight of the evidence, we must determine whether Appellant properly preserved this issue on appeal. *Commonwealth v. Mikell*, 968 A.2d 779, 780 (Pa. Super. 2009). Pennsylvania Rule of Criminal Procedure 607, provides as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A).

In the case at bar, the record reveals that Appellant failed to present a challenge to the weight of the evidence until he included it in his Pa.R.A.P. 1925(b) statement. Therefore, Appellant has waived this claim by failing to comply with Rule 607, and we are precluded from engaging in appellate review.

For the reasons set forth above, Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016