**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William PADILLA, Appellant.**

Superior Court of Pennsylvania.

Submitted July 25, 2005.

Filed Sept. 28, 2005.

Reargument Denied Nov. 29, 2005.

**996**

Adam D. Young, Public Defender, York, for appellant.

Michelle L. Sommer, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: GANTMAN, OLSZEWSKI and MONTEMURO *, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from the judgment of sentence of six months' reporting probation imposed following Appellant's bench conviction of indirect criminal contempt. Appellant was found to have violated a temporary order under the Protection from Abuse Act (PFA), 23 Pa.C.S.A. § 6101, *et seq.*, directing him to have no contact with the victim, a woman whom he had been dating for four months.

¶ 2 In the late afternoon of Friday, November 12, 2004, the victim received an emergency PFA directive ordering Appellant to have no contact with her for 18 months. Because of the timing of events, she had no copy of the order but only verbal assurance that her petition for PFA relief had been granted.

¶ 3 At approximately 2:30 a.m. on November 14, 2004, police received a report from the victim notifying them of the issuance of the PFA order because Appellant had been threatening her over the telephone as well as attempting to gain entry to her home. When police arrived at the victim's residence, she handed her cell phone to Sergeant Zurn with the information that Appellant was on the line. However, the caller denied that he was William Padilla, announced that he was attempting to reach "Crystal," and hung up. Sgt. Zurn then telephoned Appellant's cell phone number and left a message advising him that the victim had obtained a PFA order, and that he was to have no contact

with her in future. Shortly thereafter, Appellant returned the sergeant's call through the 911 service. During the ensuing conversation, and in between Appellant's imprecations, Sgt. Zurn again informed him of the existence of the no-contact order and the consequences of violating it. After that call, Sgt. Zurn confirmed with authorities that the PFA order had in fact been issued.

¶ 4 Despite the conversation with Sgt. Zurn, Appellant continued his course of telephonic threats and harassment of the victim, placing 5 or 6 more calls to her. On Sgt. Zurn's instructions the victim refused to answer her telephone once she determined that Appellant was placing the calls. Appellant was served with a copy of the order in the early afternoon of November 14, after which the calls ceased.

¶ 5 Following a hearing, Appellant was found guilty of indirect criminal contempt for violating the PFA order, and placed on 6 months' probation. This appeal followed raising the sole issue that the verbal notice of the PFA order provided by Sgt. Zurn over the telephone was insufficient to comply with the service requirements of due process.

> A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. The role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates. Thus, as with those accused with (sic) other

---

* Retired Justice assigned to Superior Court.

crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford.

*Commonwealth v. Baker,* 722 A.2d 718, 720 (Pa.Super.1998) (*en banc* ), *aff'd,* 564 Pa. 192, 766 A.2d 328 (2001) (citations and internal quotation marks omitted).

¶ 6 To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful. *Id.* at 721. Once a trial court has made a finding of indirect criminal contempt, this court will not disturb its decision absent an abuse of discretion. *Commonwealth v. Ashton (In re Donohue),* 824 A.2d 1198, 1202 (Pa.Super.2003).

¶ 7 Appellant argues that the warning given him over the telephone by Sgt. Zurn was inadequate to convey the notice required by the Pennsylvania Rules of Civil Procedure that a PFA order had been entered against him. And, if ordinary means of service were unavailable because the order was issued on Friday afternoon, a special order authorizing service by another means should have been entered, otherwise due process is subverted.

¶ 8 "[D]ue process as applied to the multi-faceted area of family cases is driven by the disparate needs of the parties, their relationship to each other and the public welfare as represented by state action." *Kelly v. Mueller,* 861 A.2d 984, 992 (Pa.Super.2004). It is these considerations which determine the answer to the query as to "what process is due." *Id.* at 993.

¶ 9 Under § 6107(b), the trial court is given authority to enter temporary *ex parte* orders on an emergency basis. Moreover, in *Commonwealth v. Stallworth,* 566 Pa. 349, 781 A.2d 110, 123–24 (2001), we found that a person who has killed the subject of a protective order becomes death penalty eligible by having actual notice of the order or the constructive equivalent. *See* 42 Pa.C.S.A. § 9711(d)(18). We find that the telephone conversations during which Appellant was informed of the emergency order and the repercussions of violating it constitute actual notice or its equivalent even in the absence of personal service.

¶ 10 This conclusion is supported by 23 Pa.C.S.A. § 6106(g), concerning service of petition and orders related to the commencement of proceedings. That subsection provides

> The petition and orders shall be served upon the defendant, and orders shall be served upon the police departments with appropriate jurisdiction to enforce the orders. Orders shall be promptly served on the police. Failure to serve shall not stay the effect of a valid order.

*Id.*

¶ 11 As this Court observed in *Kelly, supra,* "to meet special exigencies of abuse cases, the legislature fashioned acceptable PFA procedures which temporarily suspend due process rights of the alleged abuser and provide for summary procedures for implementation of Orders." *Id.* Although the *Kelly* Court was referring to a different measure than that involved here, the principle remains the same: since the point of the statute is to protect the victim from injury or death at the hands of the abuser, resort may be had to extraordinary measures when necessary to ensure that orders designed to provide protection actually do so. Otherwise, the intent of the statute could not be implemented, since emergency ex parte orders

would be rendered nugatory until personal service was effected.

¶ 12 Accordingly, we find that the verbal explanation provided to Appellant over the telephone was adequate to convey notice that a PFA order had been entered against him, and that violation of that order placed him at risk of criminal penalty. He was, therefore, properly found to have been in indirect criminal contempt of court.

¶ 13 Judgment of sentence affirmed.