J-A23036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN SOELLNER, | : | |
| | : | |
| Appellant | : | No. 1498 WDA 2013 |

Appeal from the Judgment of Sentence entered on August 1, 2013
in the Court of Common Pleas of Blair County,
Criminal Division, No(s) CP-07-MD-0001074-2013;
CP-07-MD-0001080-2013

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 30, 2014**

Kevin Soellner ("Soellner") appeals from the judgment of sentence imposed after he was convicted of two counts of indirect criminal contempt for violating a protection from abuse ("PFA") Order (hereinafter referred to as "ICC").[1]  We affirm.

Soellner and Joanne Shaw ("Shaw") were previously in a romantic relationship and have two children together.[2]  After the termination of their relationship, the trial court entered a PFA Order on March 7, 2013, prohibiting Soellner from having any contact with Shaw.[3]

---

[1] 23 Pa.C.S.A. § 6114(a).

[2] Notably to this appeal, the first name of one of the parties' children, E., has an unusual spelling.

[3] The PFA Order is not contained in the certified record.

According to Shaw, during two weeks in June 2013, she received approximately 250 text messages (collectively referred to as "the text messages") on her cell phone from an unknown telephone number. N.T., 8/1/13, at 5-6. Shaw testified that she had reason to believe the text messages came from Soellner, as they all essentially concerned the parties' children, their wellbeing, and the relationship between the parties. *Id.* at 6-7. Shaw emphasized that in some of the text messages, the sender used the correct spelling of E.'s first name, which, Shaw maintained, is information that is only known by close family and friends. *Id.* at 6. Shaw believed that Soellner was sending her the text messages under a different telephone number by using a smartphone messaging application ("app") called "TextMe."[4] *Id.* at 7.

Based upon the no-contact provision in the PFA Order, Shaw reported the text messages to the Tyrone Police Department, and informed the police regarding her belief that Soellner was sending her the text messages via the TextMe app. *Id.* at 10. In response, Officer Jessica Walk ("Officer Walk") viewed some of the text messages on Shaw's cell phone, and filed a Criminal

---

[4] TextMe is an app that allows users to send free text messages to any phone number in the United States and various other countries. The TextMe website states that users who install the TextMe app must choose a separate telephone number to use with their TextMe account. *See* https://textme.zendesk.com/hc/en-us/articles/200503297-What-is-TextMe- (last visited Sept. 8, 2014).

Complaint against Soellner charging him with two counts of ICC. *Id.* at 10, 20.[5]

Notably, the police never obtained a search warrant for Soellner's cell phone or phone records,[6] and the text messages themselves were not admitted into evidence at trial. However, the Affidavit of Probable Cause prepared by Officer Walk stated, *inter alia*, the following regarding the text messages:

> This officer made contact with [Shaw,] who showed this officer the messages. Some of the messages called Shaw names, some talked about [Shaw and Soellner's] children together, and others were talking about them being together. Examples of the messages include one on June 21, 2013, that read "y would u hate me when I have always been there for u[;"] another [message dated] June 22, 2013[,] read "And honestly fuck u they need me cause no one else loves them like me and u can't care about them cause god knows [E.] loves being with me and E[.] loves me.["] Another text [dated] June 23, 2013[,] read "u should not hate someone that made a mistake and loves you more than anything.["]

Criminal Complaint, 6/26/13, at 5 (Affidavit of Probable Cause).

On August 1, 2013, the matter proceeded to a non-jury trial before the Honorable Thomas G. Peoples ("Judge Peoples"). On direct examination,

---

[5] Prior to the filing of the charges against Soellner in the instant case, he pled guilty to two crimes involving Shaw, simple assault and ICC. *See* N.T., 8/1/13, at 48-50.

[6] Officer Walk testified that she did not attempt to secure a search warrant because (1) it would have potentially taken weeks, and she was concerned about Soellner's conduct in light of his prior abuse of Shaw and violations of the PFA Order; and (2) Soellner could have simply deleted the TextMe app from his phone and there would have been no record of the phone number that he had used with his TextMe account. *See* N.T., 8/1/13, at 23-24.

Shaw described her text message response to one of the text messages she had received as follows:

> I asked [the sender of the text message] if it was him[, *i.e.,* Soellner,] and I said if this is [Soellner,] our son E[.] is sick and I needed to know if he had been throwing up while he [E.] was with [Soellner] on Sunday[,] and he [the sender of the text message] said no[,] when I had E[.] he was fine[;] he had diarrhea but he wasn't throwing up.

N.T., 8/1/13, at 8. Shaw also testified that in another of the text messages, the sender "was stating that … our newest son[,] who is a newborn[,] [] is not his child and it's somebody else's." *Id.* at 11.[7]

At the close of his case, Soellner moved to dismiss the charges, and Judge Peoples denied Soellner's request. Judge Peoples found Soellner guilty of both counts of ICC, and sentenced him to serve an aggregate term of two months in jail. Soellner filed a Post-Sentence Motion, which the trial court denied. In response, Soellner timely filed a Notice of Appeal.

On appeal, Soellner presents the following issue for our review: "Whether the Commonwealth put forth sufficient evidence to establish [Soellner's] guilt beyond a reasonable doubt so as to allow the [fact-finder]

---

[7] Shaw offered to read the actual language of the text messages into the record, but Judge Peoples declined to hear this evidence. Further, Soellner never challenged the lack of production of the actual text messages at trial.

to convict [him] of two counts of [ICC] in the two cases before the Court?" Brief for Appellant at 5.[8]

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 2014 PA Super 181, at *83 (Pa. Super. 2014) (citation omitted).

"A charge of [ICC] consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order." ***Commonwealth v. Brumbaugh***, 932

---

[8] We observe that the Commonwealth did not file a responsive brief, nor did the trial court file a complete Pa.R.A.P. 1925(a) opinion, as Judge Peoples passed away shortly after trial.

A.2d 108, 110 (Pa. Super. 2007) (citations and quotation marks omitted). "To establish [ICC], the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012). "Once a trial court has made a finding of [ICC], this court will not disturb its decision absent an abuse of discretion." *Commonwealth v. Padilla*, 885 A.2d 994, 997 (Pa. Super. 2005). Finally, in every criminal case, "[p]roof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973).

Soellner argues that the evidence was insufficient to convict him of ICC, as the Commonwealth failed to prove beyond a reasonable doubt that he was the person who actually sent Shaw the text messages. *See* Brief for Appellant at 9.[9] Soellner points out that Shaw did not recognize the telephone number from which the text messages originated, and that this unknown number had a Los Angeles, California area code. *Id.* at 11. Soellner emphasizes that the police never obtained a search warrant for his phone or his phone records, and that the text messages were not introduced

---

[9] Soellner does not dispute that the PFA Order was sufficiently clear and that he had notice of it.

- 6 -

into evidence at trial. *Id.* at 11-12. Soellner asserts that there was no evidence presented linking him to the text messages aside from the testimony of Shaw. *Id.* Soellner acknowledges that the sender of the text messages had referenced the name of the parties' son, E.; however, Soellner contends that "the identifying information was known by other family, friends, and community members[.]" *Id.* at 14. Finally, Soellner points out the trial testimony of his mother, Deb Weston, that she was the actual owner and account holder for Soellner's cell phone, and that she (1) "limited [] Soellner's internet and app[] access and his ability to send and receive messages from [] Shaw prior to the dates the[] [text] messages were sent[;]" (2) had reviewed the Soellner's Apple "iTunes" account linked to his Apple iPhone and "at no time was a text messaging app[] of the type described by [] Shaw on [] Soellner's cell phone[;]" and (3) "[Soellner] could not purchase or download [an] app[] without her knowledge." *Id.* at 13.

Soellner's claim is purely a challenge to the sufficiency of the evidence, specifically to the identity of the sender of the text messages. The Commonwealth may sustain its burden of proving every element of ICC beyond a reasonable doubt by means of wholly circumstantial evidence, and we must view the evidence in the light most favorable to the Commonwealth. *Walsh*, 36 A.3d at 618-19; *see also Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. 2011) (stating that "circumstantial

evidence, which tends to corroborate the identity of the sender" of electronic communications, is required to establish the authenticity of text messages, and holding that the Commonwealth failed to present any evidence linking the defendant to the incriminating text messages to establish their authenticity, as "[n]o testimony was presented from persons who sent or received the text messages[, and t]here are no contextual clues in the [] text messages themselves tending to reveal the identity of the sender.").

Here, the circumstantial evidence establishing Soellner's identity as the sender of the text messages came from Shaw, who testified that the text messages contained contextual clues that Soellner was the sender. Shaw stated that the sender mentioned in some of the text messages the name of the parties' son, E., and, according to Shaw, only a small group of people would know of the correct spelling of E.'s name. N.T., 8/1/13, at 6. Shaw specifically described two text messages wherein the sender (1) mentioned having had custody of E. while he was ill; and (2) questioned the paternity of the parties' younger son. *Id.* at 8, 11. Moreover, Shaw testified that essentially all of the text messages concerned the parties' children and the relationship between the parties, *see id.* at 6-7, topics of conversation that would be of little interest to anyone outside of a limited group of people who are involved with the parties' relationship and their children. Judge Peoples credited Shaw's testimony that Soellner was the sender of the text messages; we may not substitute our credibility determination for that of

the fact-finder. *See Commonwealth v. Sanchez*, 82 A.3d 943, 972 (Pa. 2013). Moreover, we determine that the evidence of Soellner's guilt is not so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *See Melvin, supra*. Accordingly, we conclude that, when viewed in the requisite light and drawing all reasonable inferences therefrom, the circumstantial identification evidence was sufficient beyond a reasonable doubt to convict Soellner of ICC.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2014