J-A28008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VIKTOR L. STEVENSON | : | |
| | : | |
| Appellant | : | No. 336 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 31, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-MD-0004599-2019

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 19, 2021**

Appellant, Viktor L. Stevenson, appeals from the judgment of sentence entered on January 31, 2020 in the Criminal Division of the Court of Common Pleas of Allegheny County.  We affirm.

The trial court summarized the facts and procedural history in this matter as follows.

> On August 23, 2019, [Ashley Yates], filed a [temporary] petition for protection from abuse [(PFA), 23 Pa.C.S.A. § 6101, *et seq*., against Appellant, her former fiancé.  The temporary PFA order] was served upon [Appellant] on that date.  A final hearing on that [PFA] was scheduled for September 9, 2019, and [Appellant] was advised of that final hearing date[.]  On September 9, 2019, a final hearing was held on Yates' [PFA.  Appellant did not appear at that hearing.]  The [final PFA order] was extended to September 9, 2021, and [stated Appellant] was to have no contact with Yates [and that Appellant was to stay away from Yates' residence.]
>
> On September 12, 2019, at 3:30 [a.m., Appellant] was rummaging through the basement of Yates' residence, apparently collecting personal property to which he believed he was entitled.

In addition to taking this property, he also turned all of the video surveillance cameras that guarded Yates' property [to an upright position so that they pointed in an upward direction and no longer captured images. At that time, Danielle Sutton, Yates' cousin, was staying at Yates' residence with her children. Sutton saw Appellant in the basement of Yates' residence and told him that he wasn't supposed to be there because a PFA order with a two-year duration was in effect. Appellant responded by advising Sutton that he intended to leave and asking her not to call the police. Thereafter, Appellant] left and [] took Yates' dog with him[.]

[The following morning, after discovering the repositioning of Yates' security cameras, Sutton contacted the Wilkinsburg Police Department. When the police arrived, Sutton told them that she encountered Appellant in Yates' basement in the middle of the night. She also told them that Yates' dog was missing from the back porch. The police then left the residence to search for the dog. At approximately 10:00 a.m. or 11:00 a.m., Appellant returned to Yates' residence, with the animal.]

[Appellant] was cited for indirect criminal contempt as a result of his violation of the [PFA] order and a hearing was held on October 25, 2019. On that date, following the hearing, [Appellant] was found guilty of the charge of indirect criminal contempt[, 23 Pa.C.S.A. § 6114,] and was ultimately sentenced on January 31, 2020, to a [period of six months' probation. Appellant] filed a timely [notice of] appeal to [this Court and the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied and filed a concise statement raising and preserving the issue set forth below].

Trial Court Opinion, 6/19/20, at 2-3.

Appellant's brief raises the following issue for our review.

Whether [Appellant's] conviction for indirect criminal contempt can be sustained where the Commonwealth failed to prove, beyond a reasonable doubt, that he had proper notice of the [final PFA order]?

Appellant's Brief at 4.

Appellant's sole claim on appeal poses a challenge to the sufficiency of the evidence. A claim alleging that the Commonwealth introduced insufficient evidence presents a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (internal citations and quotation marks omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Appellant maintains that the Commonwealth failed to establish, beyond a reasonable doubt, that he received proper notice of the final PFA order,

which formed an essential element of his indirect criminal contempt conviction. *See* Appellant's Brief at 10. Specifically, Appellant argues:

> The Commonwealth produced no evidence that [Appellant] actually received the final PFA order on or before September 12, 2019. In fact, there was no evidence that an attempt was made to serve [Appellant] with the final PFA order, as the Commonwealth produced no evidence that the final PFA order was issued to the police or sheriff to enforce the order. Additionally, the Commonwealth produced no evidence that the police or sheriff spoke to [Appellant] over the telephone (or left him a voice message) explaining that a final PFA order had been entered against him, and the consequences if he failed to abide by it. Given these circumstances, [Appellant's] conviction for [i]ndirect [c]riminal [c]ontempt must be reversed, and his judgment of sentence vacated.

*Id.* at 11.

A court may hold a defendant in indirect criminal contempt and punish him or her in accordance with the law where the police have filed charges of indirect criminal contempt against the defendant for violating a PFA order issued pursuant to the domestic relations code. *See* 23 Pa.C.S.A. § 6114.

> A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. The role of criminal contempt and that of many ordinary criminal laws seem identical— protection of the institutions of our government and enforcement of their mandates. Thus, as with those accused [of] other crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford.
>
> To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must

- 4 -

have been wrongful. Once a trial court has made a finding of indirect criminal contempt, this [C]ourt will not disturb its decision absent an abuse of discretion.

*Commonwealth v. Padilla*, 885 A.2d 994, 996-997 (Pa. Super. 2005) (internal citations and quotations omitted), *appeal denied*, 897 A.2d 454 (Pa. 2006).

Pennsylvania law makes clear that the Commonwealth may establish the notice element of indirect criminal contempt with evidence showing the defendant received actual notice or possessed equivalent knowledge of a PFA order. *See Commonwealth v. Staton*, 38 A.3d 785, 790 (Pa. 2012) (Commonwealth may rely upon actual notice or equivalent knowledge of PFA order to prove application of death penalty aggravator predicated on violation of PFA order); *see also Padilla*, 885 A.2d at 997 (Commonwealth proves notice element of indirect criminal contempt where defendant has actual notice of PFA order or constructive equivalent). Applying these principles, Pennsylvania courts have consistently held that, for purposes of proving indirect criminal contempt, verbal communications can adequately convey notice that a PFA order has been entered against the defendant and that a violation of that order places the defendant at risk of criminal sanctions. *See Staton*, 38 A.3d at 795 (witness testimony that victim verbally informed defendant about order supported jury finding that defendant had equivalent knowledge of PFA order); *see also Padilla*, 885 A.2d at 997 ("telephone conversations during which [defendant] was informed of [emergency PFA]

order and the repercussions of violating it constitute actual notice or its equivalent even in the absence of personal service").

In this case, the evidence demonstrated that Appellant possessed adequate equivalent knowledge of the PFA at issue. At Appellant's contempt hearing, the testimony showed that Sutton saw Appellant in the basement of Yates' residence on September 12, 2019, at approximately 3:30 a.m. At that time, Sutton told Appellant that a PFA order with a two-year duration was in effect and that he was not supposed to be present at Yates' residence. In addition, when Sutton spotted Appellant and advised him that he should not have been present at Yates' residence, Appellant responded by asking Sutton to refrain from calling the police. Other testimony established that Appellant redirected Yates' security cameras so they could no longer capture images at the property. It is uncontested that Appellant returned to Yates' residence several hours after his late night encounter with Sutton and despite receiving verbal notification of the PFA order. In short, Sutton's statements to Appellant provided adequate evidentiary support for a finding that Appellant possessed knowledge of the final PFA order and the consequences of its issuance. Moreover, Appellant's conduct in redirecting Yates' security cameras and asking Sutton not to summon police corroborated his knowledge and understanding of the PFA order. Accordingly, the evidence was sufficient to establish that Appellant had notice of the PFA order.

Appellant's arguments against the sufficiency of the evidence are unavailing. More precisely, we are not persuaded by Appellant's objections asserting no evidence of Appellant's actual receipt of the PFA order on or before September 12, 2019, no evidence of service attempts by or issuance of the order to law enforcement officials, and lack of evidence showing that police authorities advised Appellant about the issuance of the final PFA order and the attendant consequences of disobedience. *See* Appellant's Brief at 11. As we made clear above, Appellant's actual receipt of the final PFA order is not the sole means by which the Commonwealth could prove the notice requirement for indirect criminal contempt. That element may be shown through either actual notice or its constructive equivalent, as occurred here. *See Padilla*, 885 A.2d at 997. For related reasons, we reject Appellant's contentions regarding a lack of service attempts by police authorities or the absence of proof that the final PFA order was issued to law enforcement officials. *See id*. at 997-998 (noting that intent of PFA statute could not be implemented if enforcement were delayed until personal service was achieved). Finally, Appellant is not entitled to relief based upon his claim that police officials needed to advise him about the issuance of the final PFA order and its attendant consequences. Although the Commonwealth established the notice requirement in *Padilla* through an officer's telephone communications with the defendant, our review of that decision confirms that the "officer" status of the informing party was neither significant nor germane to our

- 7 -

conclusion. Because Appellant possessed equivalent knowledge of the final PFA order and was aware that disobedience placed him at risk of criminal sanctions, we conclude that the trial court properly found him in indirect criminal contempt of court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2021