J-A12041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                        :              PENNSYLVANIA
                                          :

          v.                              :

ALEXIS WIGGINS                  :

           Appellant         :     No. 1174 MDA 2020

Appeal from the Judgment of Sentence Entered June 23, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): 2020-04966

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED JUNE 15, 2021**

Alexis Wiggins ("Wiggins") appeals from the judgment of sentence imposed following the trial court's finding that she was in indirect criminal contempt ("ICC") of a Protection From Abuse Order ("PFA").[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history underlying this appeal as follows:

> On May 18, 2020, Latifa Wiggins ("[V]ictim") obtained a temporary PFA Order against [Wiggins] (her stepmother).  The temporary PFA was a no contact.  On May 20, 2020, [V]ictim saw a message in her blocked voicemail folder.  Victim listened to the message and recognized the voice as [Wiggins's].  Prior to May 20, 2020, [V]ictim had spoken with [Wiggins] on the phone and in person and it was apparent to [V]ictim that the voice on the message was [Wiggins's].
>
> ….

_____

[1] **See** 23 Pa.C.S.A. § 6114.

Officer Gina Felker [("Officer Felker")] of the Exeter Police Department testified [that] she was contacted by [] [V]ictim on June 2, 2020. Victim reported [that] Wiggins and Wiggins's husband ([V]ictim's father) were harassing her. While [V]ictim was showing Officer Felker texts and emails on her phone, [V]ictim discovered the [voice message] in her folder … and they opened it. Officer Felker confirmed [that] there was a temporary PFA Order in place on May 20, 2020, the date the [voice message] was received from [Wiggins].

Following a hearing on June 23, 2020, [(the "ICC Hearing")] [the trial court] found [Wiggins] guilty of ICC for violating [the] temporary PFA Order entered on May 18, 2020. [Wiggins] was sentenced to three (3) months[ of] probation. On July 2, 2020, [Wiggins] filed a Post-Sentence Motion …[, which] the [trial] court denied … on August 11, 2020.

Trial Court Opinion, 11/19/20, at 1-3 (pages unnumbered) (paragraphs reordered and combined). Wiggins filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Wiggins now raises the following issues for our review:

1. Did the trial court err in concluding that the Commonwealth established, beyond a reasonable doubt, that [Wiggins] had notice prior to May 20, 2020, in any form or manner, that a temporary PFA [Order] had been issued against her?

2. Did the trial court err in concluding that the Commonwealth established, beyond a reasonable doubt, that [Wiggins] was guilty of ICC[,] where the date when the call and/or voice message was allegedly made by [Wiggins] was not established and could have occurred before [the] temporary PFA [O]rder [was] issued[,] or [Wiggins] was aware of the conditions of the temporary PFA [O]rder?

Brief for Appellant at 2.

We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined

to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trial of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Felder*, 176 A.3d 331, 333-34 (Pa. Super. 2017)

(citations, quotation marks and brackets omitted).

A charge of indirect criminal contempt consists of a claim that a violation of an [o]rder or [d]ecree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. … To establish indirect criminal contempt, the Commonwealth must prove: 1) the [o]rder was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the [o]rder; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007)

(internal citations and quotation marks omitted). Notice may be "actual [] or its equivalent even in the absence of personal service." *Commonwealth v. Padilla*, 885 A.2d 994, 997 (Pa. Super. 2005). "Evidence of conduct, circumstantial evidence, and logical inferences may suffice to prove" the notice requirement. *Commonwealth v. Staton*, 38 A.3d 785, 794 (Pa. 2012).

In her first claim, Wiggins argues that the evidence was insufficient to prove that she had notice of the May 18, 2020, temporary PFA Order when she left the voice message on Wiggins's phone. Brief for Appellant at 8-13. Wiggins acknowledges that the official docket includes a "Relinquishment of Firearms Receipt," indicating that Wiggins relinquished her firearms to the Luzerne County Sheriff's Office on May 19, 2020. *Id.* at 9. However, Wiggins claims, this evidence was not presented at the ICC hearing. *Id.* Wiggins further states that even if this evidence had been presented at the ICC hearing, it would not be sufficient evidence that Wiggins had notice of the May 18, 2020, temporary PFA Order. *Id.* According to Wiggins, there was no evidence presented to prove that Wiggins relinquished her firearms pursuant to the May 18, 2020, temporary PFA Order, or that she was given notice of the other terms and requirements set forth in the May 18, 2020, temporary PFA Order. *Id.* at 11-12.

Here, Wiggins relinquished her weapons to the Luzerne County Sheriff's Office on May 19, 2020, one day *after* the temporary PFA Order was issued. Further, the Relinquishment of Firearms Receipt contains an affirmation that reads, in relevant part, that

> [b]y signing below, I hereby certify that I am the lawful owner of the firearm(s), other weapon(s), or ammunition listed in this form and I concur with the listed condition. I also certify that I am relinquishing all firearms and any other weapon(s) or ammunition *that the court has ordered me to relinquish*.

Relinquishment of Firearms Receipt, 5/19/20, at 2 (emphasis added). A signature for "Alexis Wiggins" and the date "5/19/20" is handwritten below the affirmation. *Id.* The form includes the details regarding the temporary PFA Order, including the Victim's name as the PFA plaintiff, Wiggins's name as the PFA defendant, and the date on which the temporary PFA Order was issued. *Id.* at 1. We conclude that this evidence, viewed in a light most favorable to the Commonwealth as verdict winner, is sufficient to establish that Wiggins had notice of the May 18, 2020, temporary PFA Order when she left the voice message on Victim's phone. *See Felder*, *supra*; *Padilla*, *supra*; *Staton*, *supra*.

In her second claim, Wiggins argues that the evidence was insufficient to establish that she left the voice message on Victim's phone after the temporary PFA Order was entered on May 18, 2020. Brief for Appellant at 13-15. According to Wiggins, she may have left the voice message on Victim's phone prior to May 18, 2020, and Victim only discovered it later, on May 20, 2020. *Id.*

Here, Victim testified that she received the threatening voice message on May 20, 2020. N.T., 6/23/20, at 5. Additionally, Officer Felker testified that she reviewed Victim's phone log and voice message records, and confirmed that Victim received the threatening voice message on May 20, 2020. *Id.* at 13-16. Viewed in a light most favorable to the Commonwealth, we conclude that this evidence was sufficient to prove that Wiggins contacted

Victim on May 20, 2020, in violation of the May 18, 2020, temporary PFA Order. ***See Felder***, ***supra***; ***Brumbaugh***, ***supra***. Consequently, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/15/2021