J-A28020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER MATEO | : | |
| | : | |
| Appellant | : | No. 1173 MDA 2020 |

Appeal from the Judgment of Sentence Entered March 5, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): 2020-01177

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 25, 2022**

Appellant Alexander Mateo appeals from the judgment of sentence imposed after he was found in indirect criminal contempt[1] (ICC) of an order entered pursuant to the Protection from Abuse (PFA) Act.[2] Appellant challenges the sufficiency of the evidence establishing the elements of notice and intent. We affirm.

The trial court summarized the underlying facts of this matter as follows:

On January 29, 2020, the victim obtained a temporary PFA order against [Appellant]. A hearing was scheduled for February 4, 2020. [Appellant] failed to appear at the hearing and a final PFA was entered which prohibited [Appellant] from having any contact with the victim. On February 8, 2020, [Appellant] was charged with ICC for violating the PFA by contacting the victim by text

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S. § 6114.

[2] 23 Pa.C.S. §§ 6101-6122.

messages at various times from February 4, 2020 through February 7, 2020.

On March 5, 2020, a hearing was held on the ICC, Violation No. 1. According to the victim, she contacted law enforcement on February 7, 2020 to report receiving text messages from [Appellant] after she told him to stop contacting her. N.T., 3/5/20, at 6, 7. The victim identified Commonwealth's Exhibit 1, [which showed] screen shots of text messages from [Appellant] on the victim's telephone. When [Appellant] began texting the victim, she had already informed him that he was not permitted to contact her. *Id.* at 25, 12.

[Appellant] also testified at the hearing. He testified he was in Puerto Rico on February 4, 2020 and had called a "court office" and spoke with "Nancy" who told him "everything had been done without me being present and everything was fine. I had no warrant; I had no problem." *Id.* at 18. [Appellant] testified that following his conversation with Nancy, he believed "everything was dropped." *Id.* [Appellant] admitted he contacted the victim on February 4 and February 7, 2020. *Id.* at 19-20, 25. [Appellant] testified it was not until he was contacted by police on February 7, 2020 and learned he was in trouble, that he believed there was an order against him. *Id.* at 20.

[The record also reflected that o]n February 4, 2020, [Appellant] asked the victim if she went to court. *Id.* 12-14. The victim informed [Appellant] that she had and a full order was entered against him for three (3) years, including a prohibition from any contact and asked him to stop texting her. *Id.*

Trial Ct. Op., 11/13/20, at 3-4 (unpaginated).

Following [the hearing], [the trial court] found [Appellant] guilty of ICC for violating [the] PFA order entered on February 4, 2020. [Appellant] was sentenced to fifteen (15) days to six (6) months [of] incarceration in the Luzerne County Prison.

On March 12, 2020, [Appellant] filed a post-sentence motion seeking reconsideration of his sentence and a judgment of acquittal alleging he did not have notice of the PFA and lacked the intent to violate the order prohibiting any contact with the victim. The court denied [Appellant's] motion on March 13, 2020.

On May 14, 2020, [Appellant] filed a motion to reinstate his direct appellate rights *nunc pro tunc*, or alternatively, a motion [to file a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546]. On May 20, 2020, the court denied [Appellant's] motion to reinstate his appellate rights and granted his motion to file a [PCRA] petition. A hearing on the [PCRA petition] was initially scheduled for July 28, 2020 and was continued to August 6, 2020.

On August 6, 2020, pursuant to a stipulation, the court entered an order reinstating [Appellant's] appellate rights.

*Id.* at 1-2.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues:

1. Whether the trial court erred in holding that the evidence was sufficient to demonstrate that Appellant had notice of the protection from abuse order?

2. Whether the trial court erred in holding that the evidence was sufficient to demonstrate that Appellant had the wrongful intent required to violate a protection from abuse order?

Appellant's Brief at 4.

Both of Appellant's claims challenge the sufficiency of the evidence. In reviewing these issues, we are guided by the following principles:

We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact

finder to conclude that the Commonwealth established all the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This Court has repeatedly stated that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

In order to establish indirect criminal contempt, the Commonwealth must prove: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent."

*Commonwealth v. Felder*, 176 A.3d 331, 333-334 (Pa. Super. 2017) (citations omitted, some formatting altered).

**Notice**

Appellant first claims that there was insufficient evidence to prove that he had notice of the PFA order. Appellant's Brief at 10. In support, Appellant argues that although the victim informed Appellant about the PFA, he received "contradictory information from a court official," who led him to believe that no such order was in place. *Id.* Specifically, Appellant claims that he called the court after the PFA hearing and an employee named Nancy "informed him 'everything was fine,' which he reasonably interpreted to mean that the order

was dismissed." *Id.* Appellant argues that the record supports his version of events because "after he was told by Trooper Smith that the PFA was in fact active and prohibited contact, he ceased all communication with the victim and complied with the PFA order." *Id.* Therefore, Appellant concludes that there is insufficient evidence to prove notice.

To satisfy the notice element of ICC, the Commonwealth must prove "actual notice or its equivalent [] in the absence of personal service." *Commonwealth v. Padilla*, 885 A.2d 994, 997 (Pa. Super. 2005) (finding that the notice requirement for ICC was satisfied by a police officer's phone call to the defendant informing him of the PFA order); *see also Commonwealth v. Staton*, 38 A.3d 785, 794-95 (Pa. 2012) (concluding that the defendant "had equivalent knowledge of the PFA order" based on witness testimony that the victim had informed the defendant of the PFA order and the defendant deliberately avoided service by the sheriff).

Here, the trial court explained:

[Appellant] had notice of the order even though he was in Puerto Rico and had not yet been served. . . .

[Appellant's] testimony that he thought the PFA had been dropped was not credible. The evidence of record establishes that [Appellant] knew there was a hearing, chose not to attend the hearing and was advised by the victim that a full PFA order had been entered against him.

Trial Ct. Op. at 6 (unpaginated).

Following our review of the record, we discern no abuse of discretion by the trial court. *See Felder*, 176 A.3d at 333. As noted previously, Appellant

- 5 -

expressly acknowledged that the victim informed him about the PFA order when he contacted her via text message after the PFA hearing. *See* N.T., 3/5/20, at 12-14. Although Appellant claimed that he received contradictory information from a court official, the trial court did not find that testimony credible. *See Felder*, 176 A.3d at 334 (reiterating that "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"). Therefore, we agree with the trial court that there was sufficient evidence to prove that Appellant had notice of the PFA order against him. *See Staton*, 38 A.3d at 794-95; *Padilla*, 885 A.2d at 997.

Further, to the extent Appellant claims that his version of events is credible because he stopped contacting the victim after he spoke with police, that assertion goes to the weight, rather than the sufficiency, of the evidence. *See Staton*, 38 A.3d at 798 (explaining that although the defendant testified that he was unaware that a PFA order had been entered, the jury was not required to accept his testimony as true); *see also Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (stating that credibility determinations are made by the finder of fact and that challenges to those determinations go to the weight, not the sufficiency of the evidence). For these reasons, Appellant is not entitled to relief.

**Wrongful Intent**

Appellant also challenges the sufficiency of the evidence establishing intent. Appellant's Brief at 13. Specifically, he argues that although he "was

not drugged, forced, or threatened to contact the victim, he was misled into believing he could contact the victim." *Id.* In support, Appellant reiterates his claim that a court official "led him to believe the PFA was dismissed and he was permitted to have contact with the victim." *Id.* He again notes that he "immediately ceased all communication" after Trooper Smith confirmed that a PFA was in effect and claims that this "demonstrates that [Appellant] did not have the wrongful intent necessary to be convicted of indirect criminal contempt." *Id.* at 13-14.

"In contempt matters, wrongful intent can be imputed by virtue of the substantial certainty that [one's actions would place one] in contact with [PFA petitioner] in violation of the PFA Order." *Commonwealth v. Wilson*, 227 A.3d 928, 932-33 (Pa. Super. 2020).

> Here, the trial court explained:
>
> [The] record establishes [Appellant's] intent to contact the victim. Despite the fact that [Appellant] knew he was under a PFA order which prohibited him from contacting the victim for three (3) years **and** the victim requested that he stop contacting her, [Appellant] persisted in contacting the victim by text message until he was contacted by police to turn himself in.

Trial Ct. Op. at 6-7.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Felder*, 176 A.3d at 333. As discussed previously, Appellant had notice of the PFA order, which prohibited Appellant from contacting the victim for a period of three years. *See* N.T., 3/5/20, at 12, 25. Further, there is no dispute that Appellant continued to send text messages

to the victim even after she informed Appellant about the order and asked him to stop contacting her. **See** N.T., 3/5/20, at 19-20, 25. Therefore, given the substantial certainty that Appellant's contact with the victim would be a direct violation of the PFA order, we agree with the trial court that there was sufficient evidence to establish wrongful intent. **See Wilson**, 227 A.3d at 932-33. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/25/2022