J-S07006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANTE MCKNIGHT | : | |
| | : | |
| Appellant | : | No. 649 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 29, 2023
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-21-01914

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED: MARCH 26, 2024**

Dante McKnight appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Lancaster County, following his conviction for six counts of indirect criminal contempt as a result of violating temporary and final Protection from Abuse (PFA) orders.[2] ***See*** 23 Pa.C.S.A. § 6114. The trial

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court vacated its original September 7, 2022 sentence of eighteen to thirty-six months' imprisonment and ordered the preparation of a presentence investigation report. On March 29, 2023, the trial court resentenced McKnight to the instant, flat sentence of eighteen months' imprisonment and eighteen months of probation—three six-month sentences of incarceration on three counts and an additional eighteen months of probation for the remaining three counts.

[2] When a PFA order is involved, "an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa. Super. 2007). Thus, as any individual accused of a crime, "one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal
*(Footnote Continued Next Page)*

court sentenced McKnight to a flat sentence of eighteen months' incarceration, followed by eighteen months of probation.[3]  After careful review, we affirm.

M.G.O. (victim) and McKnight were in a relationship for several years; the parties lived together, with the victim's children, N.G. and L.B. (collectively, Children), at 427 Locust Street in Lancaster.  On March 29, 2021, the victim filed a PFA petition against McKnight, on behalf of herself and Children, alleging several recent incidents of abuse.  *See* PFA Petition, 3/29/21, at ¶ 8 (alleging prior evening McKnight argued with victim, told her he knew she had been sleeping with various men from Facebook, broke property in the parties' home, yelled and threatened her life, showed her his handguns, and threatened to kill her); *id.* at ¶ 9 (alleging, couple months prior, McKnight placed gun to victim's head, said he would kill her and their family if she ever left him, and was "yelling and screaming"); *id.* (alleging, about one year ago, McKnight "beat the hell out of" the victim's son because he had "disrespected" McKnight); *id.* (alleging two years ago, after argument, McKnight slapped victim and threw her down on bed); *id.* (alleging "[o]ver the years, [the victim has] had black eyes, stitches in [her] head from being hit with a scale[,] and that every[ ]day [she and McKnight] fight and [h]e threatens to kill [her] and says he will kill [her] family").

_____

procedures afford." *Id.*  Moreover, as in all criminal matters, the filing of post-sentence motions is optional.  *See* Pa.R.Crim.P. 720(B).

[3] *See **Commonwealth v. Wagner**, 564 A.2d 162 (Pa Super. 1989) (flat sentence permissible under PFA statute).

On that same date, the court entered a temporary PFA order against McKnight that prohibited him from contacting abusing, harassing, stalking, threatening, or attempting to threaten to use physical force against the victim and Children. *See* Temporary PFA Order, 3/29/21, at 1. The temporary order also evicted and excluded McKnight from the parties' Lancaster residence. *Id.* at 2. A sheriff's return of service, included in the record, documents that on March 31, 2021, at 11:38 AM, the temporary PFA was served on McKnight "via Phone" and that the server "advised [McKnight] of all provision[s] of the [PFA] order along with the court date and time." Sheriff's Return of Service, 4/1/21. The server also indicated that he advised McKnight that he was evicted from the parties' residence and that McKnight "acknowledged that he understood all provisions along with the penalties of the [PFA] order." *Id.* In addition, a "Notice of Hearing and Order," dated March 29, 2021, included in the certified record, advised McKnight that he had been sued in court and that there would be a hearing on the matter at the Lancaster County Courthouse on April 20, 2021. *See* Notice of Hearing and Order, 3/29/21, at 1. The notice indicated that, in addition to other individuals, it was distributed to both McKnight and McKnight's attorney. *Id.* at 2.

On May 11, 2021, the court held a final PFA hearing, at which the victim and Officer Elliot Corado[4] of the Lancaster Bureau of Police testified.[5] McKnight was not present at the hearing. At the conclusion of the hearing, the court entered a final PFA order, effective for three years. The final order prohibited McKnight from abusing, harassing, stalking, threatening or attempting to threaten to use physical force against the victim and prohibited McKnight from contacting the victim "by telephone or by any other means, including through third persons." Final PFA Order, 5/11/21, at 1. The final order also indicated that McKnight was "served in accordance with Pa.[]R.C.P. [] 1930.4 and provided notice of the time, date, and location of the hearing scheduled in this matter." *Id.* at 2. The order stated that McKnight remained evicted from the parties' residence, was to stay away from the residence, and "prohibited [him] from having **ANY CONTACT**" with the victim. *Id.* (emphasis in original). The order also granted the victim temporary primary physical custody of Children, prohibited McKnight from possessing or acquiring any

---

[4] Officer Corado was the individual that served McKnight with notice of the temporary PFA order.

[5] We note that McKnight has failed to include a transcript from his final PFA hearing held on May 11, 2021. Therefore, we are unable to assess whether McKnight's counsel may have been provided actual notice of the final PFA order orally or in writing at the hearing. We reiterate that it is McKnight's responsibility, as the appellant, to ensure that the certified record on appeal is complete. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006).

firearms, directed McKnight to relinquish any firearm in his possession, and prohibited McKnight from stalking or harassing the parties' son.[6]  ***Id.*** at 3.

The final PFA order was filed on May 11, 2021.  The docket indicates that the order was filed with the Prothonotary of Lancaster County, that Pa.R.C.P. 236 notice was sent, and that the following parties were copied: "PSP, LCPD, Plaintiff via Atty M. Bleecher, [and] **Defendant**."  Lancaster County Prothonotary Docket, Entry "6," 5/11/21 (emphasis added).

In April, September, November, and December of 2021, the victim alleged that McKnight violated the PFA orders by contacting her through Facebook Messenger and sending her seven threatening handwritten letters and notes from prison.[7]   As a result of allegedly violating the PFA orders, McKnight was charged with committing indirect criminal contempt, at four separate reference numbers.[8]

---

[6] The record is not clear as to whether the "son" referred to in the PFA order is also McKnight's child.

[7] The victim testified that she recognized the handwriting on the letters/envelopes mailed to her from Lancaster County Prison as being that of McKnight.  ***See*** N.T. Contempt  Hearing, 9/7/22, at 17-18.

[8] In Lancaster County, criminal complaints for indirect criminal contempt are assigned reference numbers.  The following reference numbers were assigned to McKnight's matters:

- Ref. # 21-0060 (guilty of one count of indirect criminal contempt)
- Ref. # 21-0061 (not guilty of one count of indirect criminal contempt)
- Ref. # 21-0092 (guilty of one count of indirect criminal contempt; not guilty of two counts of indirect criminal contempt)
- Ref. # 21-0204 (guilty of four counts of indirect criminal contempt).

***See*** Commonwealth's Brief, at 2.

On September 7, 2022, the court held an indirect criminal contempt hearing during which the trial judge took judicial notice of the temporary PFA order and the final PFA order. *See* N.T. Contempt Hearing, 9/7/22, at 7. McKnight, who was present at the hearing, engaged in the following exchange with the trial judge:

> Trial Judge: I just want to be clear on the record.
>
> Mr. McKnight, looking at the contents of these letters is very disturbing. There are threats of death in here. There are threats of death to the [victim,] but also others in here.
>
> The Facebook messages are also threatening to the [c]ourt. It's also concerning to the [c]ourt what you wrote in these letters, not just that you sent them, but what was written in here. I'm looking specifically at the one statement that I saw that - - this one especially: Every last one of you will die in the worst way, getting burned alive, snitches get stitches, nobody going to stop me.
>
> I find that extremely disturbing. **The fact that you had an order against you and not only did you violate it, but you violated it with threats of death to what I assume are family members of yours.** You threatened her and threatened some of the children that everyone is going to die. You even said burning and that nobody is going to stop you.
>
> Based on that I find you to be a danger, not only to [the victim], but to the rest of the family. Based on that, I'm going to sentence you on each count to three to six months in prison. Each one is going to be consecutive to each other. I have to protect each individual from your threats to extreme violence against them.
>
> McKnight: **Okay.**
>
> \* \* \*
>
> Trial Judge: **Any questions regarding the sentence.**
>
> McKnight: **No, ma'am.** I apologize to you for having to look at those letters.

*Id.* at 33-35 (emphasis added).

- 6 -

McKnight timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, McKnight presents the following issue for our consideration:

> Was the evidence presented by the Commonwealth insufficient to prove[,] beyond a reasonable doubt[,] that [] McKnight committed any of the indirect criminal contempts for which he was charged, where the Commonwealth produced no evidence that [] McKnight had been given notice of the [t]emporary and [f]inal PFA [o]rders which he had allegedly violated?

Appellant's Brief, at 5.

"When reviewing a contempt conviction . . . we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Brumbaugh*, *supra* at 109-10.

Indirect criminal contempt "is committed by obstructive conduct that occurs outside the court's presence." *Commonwealth v. Perkins*, 292 A.3d 1144, 1147 (Pa. Super. 2023) (citation omitted).

> Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. . . . To establish indirect criminal contempt, the Commonwealth must prove: 1) the [o]rder was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) **the contemnor had notice of the [o]rder**; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Brumbaugh*, *supra* at 110 (emphasis added) (citations and quotation marks omitted).

Here, McKnight argues that the Commonwealth failed to prove, beyond a reasonable doubt, that he had notice of either the temporary or final PFA orders because he was not present for the final PFA hearing in May 2021, the method of service on the final PFA order is not specified, and the mere fact that McKnight "was served with previous [indirect criminal contempts] was not sufficient to prove that he had notice of the [t]emporary or [f]inal PFA [o]rder[s] where the orders 'did not explain what the PFA prohibited, or the consequences of violating it.'" Appellant's Brief, at 10. Finally, McKnight contends that his reference "to the courts in his letters to [the victim]" also fails to prove that he received notice of the PFA orders. *Id.* at 10-11.

In **Commonwealth v. Stevenson**, 283 A.3d 196 (Pa. 2022), our Supreme Court held that "to convict a defendant of indirect criminal contempt for violating a PFA order, the Commonwealth must demonstrate beyond a reasonable doubt that, at the time of the violation, the defendant had actual knowledge of the PFA order, regardless of how the defendant gained this knowledge." *Id.* at 199. In **Stevenson**, the defendant argued on direct appeal that the Commonwealth was required to present adequate proof that he received proper notice of the PFA order "from a member of law enforcement or a person tasked by the trial court to provide such notice." *Id.* Ultimately, the Supreme Court concluded that "[defendant's] conduct and words on that morning, combined with the circumstances leading up to the PFA violations, clearly establish[ed] that he had sufficient knowledge of the PFA order to

sustain a conviction of indirect criminal contempt for violating the order." *Id.* at 207.

In reaching its holding, the *Stevenson* Court stated:

[T]he law clearly spells out that, to be convicted of indirect criminal contempt for violating a PFA order, a defendant must simply have notice of the order, regardless of whether that notice is obtained: (1) by service of the PFA order; (2) verbally from anyone; or (3) by other scenarios that can establish that the defendant had knowledge of the order.

*Id.* at 206. The Court found "this standard . . . appropriately balances the defendant's interest in knowing of the existence of the PFA order with the PFA's objective of protecting PFA plaintiffs from abuse." *Id.*

Here, the Lancaster County Sheriff Office's return of service, included in the certified record, specifically states that Deputy Camren Ney served the temporary PFA to McKnight "via phone." *See Commonwealth v. Padilla*, 885 A.2d 994, 998 (Pa. Super. 2005) (officer's verbal notice of temporary PFA order over telephone was sufficient to satisfy the service requirements of due process). Thus, we conclude that McKnight had sufficient notice of the temporary PFA order.

With regard to notice of the final PFA order, McKnight acknowledged at the indirect criminal contempt hearing that there was "an order against [him] and not only did [he] violate it, but [he] violated it with threats of death." N.T. Contempt Hearing, 9/7/22, at 33, 34. Additionally, at the contempt hearing, McKnight's attorney acknowledged the accuracy in the prosecutor's statement that "[t]his is the time that the [c]ourt has set aside for the hearing to address allegations of [i]ndirect [c]riminal [c]ontempt arising from the

alleged allegations of the PFA docketed at CI-21-01914, which was issued by Judge Brown back on March 29th, 2021, which prohibits the defendant form having any contact with [the victim a]nd prohibits the defendant from being at or near the residence at 427 Locust Street in Lancaster, Pennsylvania." *Id.* at 4. Finally, McKnight's attorney did not object to the trial court taking judicial notice of the PFA orders or the protected parties in those orders. *See id.* at 7, 10.

Moreover, McKnight, himself, stated that he had nothing further to add with regard to being resentenced for the contempt convictions based on the PFA violations. *See* N.T. Resentencing Hearing, 3/29/23, at 5 (McKnight stating, "No, Your Honor. Nothing I can really say, [n]o.," in response to trial judge asking if he wanted to say anything on his own behalf at resentencing); *id.* at 6-8 (defense attorney saying nothing in response to victim testifying how her life has been "destroyed" by McKnight and prosecutor's statement that, "[**McKnight**] **knows he's not to be contacting her** and then contacts her by Facebook Messenger, by handwritten letters from Lancaster County Prison, and by handwritten notes from Lancaster County Prison[,] causing her to live in extreme distress") (emphasis added). Finally, in his Rule 1925(b) statement, McKnight failed to raise the specific issue of the court taking judicial notice of the PFA orders.[9]

_____

[9] McKnight raised the following claim in his Rule 1925(b) statement:

*(Footnote Continued Next Page)*

Accordingly, we find that McKnight has waived this issue on appeal. ***See***

***Commonwealth v. Gentles***, 266 A.3d 617 (Pa. Super. 2021) (Table) (where

court took judicial notice of PFA order and entered it into evidence at indirect

criminal contempt hearing, defendant failed to object to its admission at

contempt hearing on that basis and made no mention of court's taking judicial

notice of PFA order in Rule 1925(b) statement, defendant waived argument

on appeal); ***see also*** Pa.R.A.P. 1925(b)(4)(vii).[10]

Judgment of sentence affirmed.[11]

---

> The evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [] McKnight committed any of the indirect criminal contempts for which he was charged. Specifically, the Commonwealth produced no evidence that []McKnight had been given notice of the PFA which he had allegedly violated.

Pa.R.A.P. 1925(b) Statement, 5/30/23, at 1-2.

[10] In fact, the only reference defense counsel made regarding "whether or not Mr. McKnight was served with the PFA" came in response to Officer Corado's testimony that he did not receive the Facebook Messenger messages McKnight allegedly sent the victim, but "only read the complaints." N.T. Contempt Hearing, 9/7/22, at 23, 25. Specifically, defense counsel complained that the officer "did not testify personally as to the incident of violation[—]of the alleged violations." ***Id.*** at 25.

[11] In addition, the victim testified, without objection, at the contempt hearing, in the presence of McKnight and his attorney, that she was "the plaintiff **in the PFA against [McKnight]**." N.T. Contempt Hearing, 9/7/22, at 7 (emphasis added); ***id.*** at 19 (victim testifying she received Facebook Messenger message from McKnight "**about three weeks or so after [she] got the PFA**") (emphasis added). ***See Commonwealth v. Swarner***, 225 A.3d 1185 (Pa. Super. 2019) (Table) (Commonwealth proved defendant had notice of PFA order where trial court took judicial notice of order at defendant's indirect criminal contempt trial and defendant's knowledge of order also established though victim's testimony at indirect criminal contempt trial).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/26/2024