J-A07027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHANIE MARIE WELTY | : | |
| | : | |
| Appellant | : | No. 1402 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 28, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-MD-0001132-2024

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 14, 2025**

Appellant, Stephanie Marie Welty, appeals from the judgment of sentence entered on August 28, 2024, in the Criminal Division of the Court of Common Pleas of Adams County, following her conviction for one count of indirect criminal contempt (ICC).[1]  We affirm.

The facts are not in dispute.  On April 24, 2024, following an assault during which Appellant lacerated the finger of her estranged husband, Lee Martin Welty (Victim),[2] the trial court entered a final order pursuant to the Protection from Abuse Act (PFA), 23 Pa.C.S.A. § 6101 *et seq*.  The PFA order incorporated the provisions of an earlier custody order, which limited the

---

[1] 18 Pa.C.S.A. § 6114(a).

[2] As a result of this attack, Appellant, on March 11, 2024, entered a plea of *nolo contendere* to one count of simple assault in violation of 18 Pa.C.S.A. § 2701(a)(1).

method and substance of permissible communications between Appellant and Victim.[3] In relevant part, the incorporated custody order provided that Appellant and Victim shall communicate only *via* text message. In addition, the incorporated custody order limited the circumstances under which Appellant could contact Victim, stating: "The parents shall limit the substance of their communications to facilitating supervised visits[,] counseling between [Appellant] and the child[,] and any other matter affecting the well-being of the child." Trial Court Order, 4/22/24.

The trial court summarized the ensuing factual and procedural history as follows.

> On July 30, 2024, Trooper Hunter Jones (hereinafter Trooper Jones) of the Pennsylvania State Police filed a criminal complaint against Appellant and charged her with one count of [ICC] in violation of [Section 6114(a)]. As an ungraded misdemeanor. Trooper Jones alleged that between June 20, 2024 and July 19, 2024, Appellant sent numerous text messages to [Victim] which were in violation of the final PFA order entered on April 24, 2024.
>
> On August 28, 2024, an ICC hearing was held before the [trial c]ourt. Victim testified about several text messages which Appellant sent[.] The seven pages of text messages were marked as Commonwealth Exhibit 1 and admitted into evidence.
>
> .   .   .
>
> The Commonwealth also called Trooper Jones as a witness at the ICC hearing. Trooper Jones testified that on July 14, 2024, he had contact with Victim concerning the alleged text messages and [her] violation of the final PFA order. On July 19, 2024, Trooper Jones contacted Appellant and Appellant admitted to sending the text messages. Appellant [subsequently] had a conversation with

_____

[3] Appellant and Victim are the parents of a teenage son.

- 2 -

Trooper Jones and advised she had contacted Victim and was trying to arrange a meeting between Appellant, Victim and Trooper Jones. Trooper Jones advised Appellant that this [was] a violation of the PFA [order] because such a meeting [was] not related to the well-being of [the child shared by Appellant and Victim].

Appellant testified at the ICC hearing and admitted to sending all the text messages to Victim contained in Commonwealth Exhibit 1. Appellant testified that all the text messages sent to Victim [concerned] the well-being of [the child she shared with Victim]. Appellant admitted she contacted Victim and Trooper Jones in an attempt to arrange a meeting and also admitted Trooper Jones was not involved with the June 3, 2023 criminal investigation[, which lead to her assault conviction following her attack on Victim].

The [trial c]ourt found the testimony of Victim credible and the testimony of Appellant incredible. The [c]ourt determined the Commonwealth met [its] burden of proof and found Appellant guilty of one count of [ICC]. The [c]ourt sentenced Appellant to six months of probation effective August 28, 2024.

On September 25, 2024, Appellant, through counsel, filed a notice of appeal with [this Court]. On September 30, 2024, Appellant was directed to file a concise statement of errors complained of on appeal, which Appellant timely filed on October 7, 2024.

Trial Court Opinion, 10/29/24, at 2-5.

Appellant raises three claims on appeal.

The trial court erred in not-defining "well-being;"

The Commonwealth failed to present sufficient evidence to establish the crime of [ICC] beyond a reasonable doubt; and,

The trial court's verdict of guilt on [ICC] was against the weight of the evidence presented at trial.

Appellant's Brief at 6.

Because Appellant frames her sufficiency challenge as an attack on the clarity element of her ICC conviction, we shall address Appellant's first two claims in a single discussion. Here, Appellant asserts that, in the absence of a definition of "well-being," the Commonwealth failed to adduce sufficient evidence of guilt on the charge of ICC. *See id*. at 11. Reading the term "well-being" broadly, Appellant claims that "any discussion and any question could be considered [related to] the well-being of the child." *Id*. at 10 (internal quotation marks omitted). Building upon this contention, Appellant declares:

> The text messages in question at the ICC hearing dealt with [Appellant's] therapy appointments, dropping the PFA to better relations between [Appellant] and [Victim] so that the child's life would be improved, a correction in a tax form so that [Appellant] could have access to money to support the child, and bettering relations between the parents through open conversation instead of the courts. Each one of these, regardless of the sender, would have improved the well-being of the child. In fact, without a legal definition by the trial court, almost anything could be considered for the well-being of the child. **Given that the child was fifteen (15) years old at the time, [Victim's] new haircut could be grounds for discussion due to the embarrassment it may cause a teenage boy**.

*Id*. at 10 (emphasis added).

We assess Appellant's sufficiency challenge under a familiar standard.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-110 (Pa. Super. 2007),

*citing* *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001)

(citations and quotations omitted).

Our Court has explained the nature, purpose, and required elements of

an ICC offense in the following manner.

[An ICC charge] consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005). "Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order." *Id.* at 996. As with those accused of any crime, "one charged with [ICC] is to be provided the safeguards which statute and criminal procedures afford." *Id.* at 996-997 (citation omitted). To establish [ICC], the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003).

*Brumbaugh*, 932 A.2d at 110.

The trial court concluded that "the final PFA order, in conjunction with

the language set forth in [the incorporated] custody order dated April 22,

2024, was definite clear, specific, and left no doubt or uncertainty to Appellant as to the prohibited conduct set forth in the PFA order." Trial Court Opinion, 10/29/24, at 7. Appellant rejects this construction of the PFA order and, instead, contends that because the original PFA allowed communications "affecting the well-being of the child," then all communications concerning the child, however remotely related, were sanctioned by the court. In Appellant's broad reading of the term "well-being," any topic even distantly related to the child's happiness – even Victim's haircut - represents a permissible subject of communication since it may cause "embarrassment" to a teenager. *See* Appellant's Brief at 9-10.

We agree with the trial court that the PFA order at issue, which limited communications to those which facilitated supervised visits, addressed counseling between Appellant and the child, and discussed other matters affecting the well-being of the child, was sufficiently clear and unambiguous to support an ICC conviction. The nature of the prohibited conduct was readily ascertainable from the text of the order, particularly when the words employed in the directive are weighed in conjunction with the purpose of litigation under the PFA. Indeed, the fact that Appellant routinely appended the phrase "well-being of the child" to her messages suggests strongly that she understood the precise parameters of the conduct permitted under the order, as well as the consequences of noncompliance, and attempted to employ subterfuge to avoid the criminal sanctions which could emerge from

disobedience. Our Supreme Court has made clear that Pennsylvania courts may not "reward parties who play dumb to circumvent proscription." *See County of Fulton v. Secretary of Commonwealth,* 292 A.3d 974, 1010 (Pa. 2023).[4]

Appellant has not contested that she had notice of the PFA order, that she sent the various text messages to Victim, and that wrongful intent could be inferred under the circumstances of this case. Accordingly, because we are satisfied that the Commonwealth has proven each of the elements of an ICC charge beyond a reasonable doubt, we conclude that Appellant is not entitled to relief on her sufficiency claim.

We turn now to Appellant's claim that her ICC conviction was against the weight of the evidence. This claim is both waived and without merit.

A challenge to the weight of the evidence must be raised prior to sentencing or in a post-sentence motion. *See* Pa.R.Crim.P. 607(A). An appellant waives review if the claim is raised for the first time on appeal. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009). In this case, Appellant did not raise her weight claim before filing her notice of appeal; hence, the claim is waived. *See* Trial Court Opinion, 10/29/24, at 10, *citing Commonwealth v. Priest*, 18 A.3d 1235 (Pa. Super. 2011) (finding waiver

---

[4] Although *County of Fulton* did not arise in the context of a criminal prosecution, this Court has cited civil caselaw in discussing the clarity element of an ICC charge. *See Commonwealth v. Baker*, 722 A.2d 718, 721 (Pa. Super. 1998), *aff'd*, 766 A.2d 328 (Pa. 2001).

where weight claim was not presented to trial court before notice of appeal was filed).

Even if Appellant did not waive her weight claim, we would conclude that that she is not entitled to relief on the merits. Our review is guided by the following principles.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (internal citations omitted).

We have thoroughly reviewed the submissions of the parties, the opinion of the trial court, and the certified record. Our review confirms that the PFA order was clear, and that Appellant has not lodged meaningful challenges to the second, third, and fourth elements of her ICC conviction. Not only did Appellant communicate with Victim about a broad range of topics outside the well-being of their shared child, she did so even after she was warned by law enforcement that she had already violated the PFA order. We perceive no

abuse of discretion in the trial court's conclusion that Appellant's ICC conviction did not shock the conscience.

Judgement of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/14/2025